U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

DEC 1 4 2011

CLERK, U.S. DISTRICT COURT
by_____
           Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MATHEW WYRICK                §
                             §
VS.                          §    NO. 4:11-CV-570-A
                             §    (NO. 4:10-CR-005-A)
                             §
UNITED STATES OF AMERICA      §

MEMORANDUM OPINION
and
ORDER

Came on to be considered the motion of movant, Mathew Wyrick

("Wyrick"), under 28 U.S.C. § 2255 to vacate, set aside, or

correct sentence, filed on August 15, 2011.  The government filed

a response to the motion on September 6, 2011, and on the same

day Wyrick filed a document entitled "Supplement Brief in Support

of Mathew Wyrick to Vacate, Set-Aside or Correct Sentence

Pursuant to Title 28 USCS § 2255."  Wyrick then filed a reply to

the government's response, and the government filed a

supplemental response.  Having now reviewed all of the parties'

filings, the entire record of this case, and applicable legal

authorities, the court concludes that the motion should be

granted in part and denied in part.

The court is granting the motion to the extent of correcting

the term of supervised release from five years to a term of three

years.  The court is denying the motion in all other respects.

I.

Background

The background of Wyrick's case is as follows: While Wyrick was a supervisor at BNSF Railway in Memphis, Tennessee, he devised a scheme in 2003 to overbill his employer for work done by outside vendors and to pocket the extra money.  After Wyrick was transferred to Kansas, he recruited his father-in-law and co-conspirator, Robert Steele ("Steele"), to join the conspiracy, and arranged for Steele's company, S & S Erectors, to become a BNSF vendor.  Between 2005 and 2007, S & S Erectors submitted $1.8 million in invoices, many of them fraudulent, and Wyrick and Steele split the illegal proceeds.  BNSF then uncovered the fraud, which amounted to an estimated $1.2 million in losses.  In 2010, Wyrick was charged with eight counts of wire fraud and conspiracy to commit wire fraud in a superseding indictment. Wyrick waived his right to a jury trial in a plea agreement and pleaded guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349.  On July 23, 2010, the court sentenced Wyrick to a term of imprisonment of 63 months, followed by a five-year term of supervised release, and ordered him to pay $1,285,357.73 in restitution.  Wyrick did not appeal, but timely filed this § 2255 application.

2

II.

## Grounds of the Motion

Wyrick has asserted eight grounds for relief in his motion.

He complains of various sentencing errors (Grounds Three and Five

to Eight),[1] attacks the validity of his guilty plea as not

knowing and voluntary (Ground Two), asserts claims for

ineffective assistance of counsel by his trial counsel, Warren

St. John (Ground One), and alleges the court lacked jurisdiction

over his case (Ground Four).

III.

## Treatment of § 2255

After conviction and exhaustion of any right to appeal,

courts are entitled to presume that a defendant stands fairly and

finally convicted.  United States v. Frady, 456 U.S. 152, 164

(1982); United States v. Shaid, 937 F.2d 228, 231-32 (5th Cir.

1991) (en banc).  A defendant can challenge his conviction or

sentence after it is presumed final only on issues of

constitutional or jurisdictional magnitude and may not raise an

issue for the first time on collateral review without showing

both "cause" for his procedural default and "actual prejudice"

---

[1] Wyrick's Ground Three argument, though couched as an equal protection claim, is in reality an attack on his sentence.

3

resulting from the errors.  <u>Shaid</u>, 937 F.2d at 232.  Section 2255 does not offer recourse to all who suffer trial errors, but is reserved for transgressions of constitutional rights and other narrow injuries that could not have been raised on direct appeal but, if condoned, would result in a complete miscarriage of justice.  <u>United States v. Capua</u>, 656 F.2d 1033, 1037 (5th Cir. 1981).

IV.

## The Grounds of the Motion

A.   <u>Sentencing Errors</u>

Wyrick asserts several grounds for correcting his sentence: he alleges that there were errors in the presentence report ("PSR") that led to sentencing errors (Ground Five); that his equal-protection rights have been violated (Ground Three); that the court misapplied the sentencing guidelines (Ground Four); that the court misapplied the Supreme Court's decision in <u>Booker v. Washington</u>, 543 U.S. 220, 245 (2005) (Ground Seven); and that the court erred in assessing enhancements to his sentence (Ground Eight).  The court concludes that Ground Five provides a basis for correcting his sentence with respect to the term of supervised release, but that the other grounds asserted by Wyrick have no merit.

1.   <u>Supervised Release Term</u>

Although Wyrick frames this issue as a breach of his plea
agreement, his complaint is actually that the part of his
sentence imposing a five-year term of supervised release exceeds
the statutory maximum of three years.  Supplemental Br. at 33-34;
Sent'g. Tr. at 19; July 28, 2010 Order and J.  Wyrick is correct;
as the government acknowledges in its response to Wyrick's
supplemental brief, the probation officer incorrectly stated in
the PSR that Wyrick faced a maximum five-year term of supervised
release, PSR at ¶ 112, and the court erred in imposing a five-
year term as part of Wyrick's sentence.  Wyrick's maximum term of
imprisonment was 20 years for one count of conspiring to commit
wire fraud in violation of 18 U.S.C. §§ 1343 and 1349.[2]  His 20-
year offense is classified as a "Class C felony," <u>see</u> 18 U.S.C.
§ 3559(a)(3); and, for a Class C felony, the maximum term of
supervised release is three years unless "otherwise provided," 18
U.S.C. § 3583(b)(2).  Because nothing in § 1343 and § 1349 has
provided otherwise, the maximum term of supervised release that
could be imposed on Wyrick is three years.

---

[2]The court correctly admonished Wyrick that the maximum statutory term of
imprisonment was 20 years.  Rearraignment Tr. at 19.  However, the presentence report ("PSR")
incorrectly stated that the maximum punishment was 30 years, making it a Class B felony, and
that error undoubtedly led to the PSR's determination that the maximum term of supervised
release was five years.  PSR at ¶ 108, 112-13.  No party filed any objections.

"If the court finds that . . . the sentence imposed was not authorized by law or otherwise open to collateral attack, . . . the court shall . . . correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).  The court is therefore correcting the sentence by reducing Wyrick's five-year term of supervised release to a three-year term.  In making this correction, the court is only considering the facts that were before the court during Wyrick's original sentencing.  See Webb v. United States, Nos. 1:78-CV-254/1:04-CR-1, 1:04-CR-186, 2008 WL 351118, at *5 (E.D. Tenn. Feb. 6, 2008); see also United States v. Beverly, Nos. 96-C004, 87-CR-521, 1997 WL 666514, at *4 (N.D. Ill. Oct. 23, 1997).

   2.   Sentencing Disparities and *Booker* Grounds

   Wyrick's remaining attacks on his sentence do not have any merit.  Wyrick's allegation that the court's sentence resulted from a misapplication of the holding in Booker v. Washington, 543 U.S. at 245, is flatly contradicted by the record.  See Supp Br. at 39; Plea Agreement at ¶ 4; Rearraignment Tr. at 7-9, 21-22; Sent'g. Tr. at 12, 17.  In keeping with Booker's mandate, the court informed Wyrick that the "guidelines have been determined to be only advisory."  Rearraignment Tr. at 8.  There is nothing to support Wyrick's allegation that Booker was not followed in

6

calculating his sentence.

Wyrick's other allegation, that the court violated 18 U.S.C. § 3553(a)(6) and his equal protection rights by imposing a disparate sentence, is also without merit.[3]  Supplemental Br. at 30, 39.  In determining the particular sentence to impose upon a defendant, the court considers "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  Although Wyrick contends his sentence is disparate to a co-conspirator, Kenny Avery ("Avery"), who received a six-month sentence after pleading guilty to conspiring to commit wire fraud, Supplemental Br. at 39; App. K, Wyrick fails to show that the two defendants were found guilty of similar conduct.  PSR at ¶ 16-28.  As the record demonstrates, Wyrick's conduct was far more severe in directing the conspiracy and benefitting from the scheme; whereas Wyrick abused his position of authority, Avery was a subordinate whom Wyrick supervised; and whereas Wyrick's conduct extended to 2007, Avery's ended in 2005.  Id.  Thus, Wyrick fails to show the existence of any unwarranted disparities in his sentence with respect to Avery.

---

[3]Although presented as an equal protection claim, in substance Wyrick is complaining this court violated 18 U.S.C. § 3553(a)(6) by failing to ensure its sentence was not an unwarranted disparity.

As for Wyrick's complaint that the restitution order is "incorrect" and "exorbitant," Supplemental Br. at 40, the Fifth Circuit has made plain that any "complaints concerning restitution may not be addressed in § 2255 proceedings," United States v. Hatten, 167 F.3d 884, 887 (5th Cir. 1999). The court simply "lacks jurisdiction to modify a restitution order under § 2255." Campbell v. United States, 330 Fed. App'x 482, 483 (5th Cir. 2009).

### 3. Alleged Sentencing Guideline Errors

Wyrick's allegations that this court misapplied the sentencing guidelines and improperly assessed enhancements are not cognizable on collateral review. Wyrick alleges this court misapplied § 1B1.3(a)(2) of the U.S. Sentencing Guidelines Manual ("USSG") when it held him accountable for the total loss stemming from all of his jointly undertaken activity in the conspiracy. Supplemental Br. at 35-38. Wyrick also complains that the court erred in assessing enhancements to this sentence under USSG §§ 2B1.1(b)(10)(C) (Sophisticated Means), 3B1.1 (Aggravating Role), and 3B1.3 (Abuse of Position of Trust). However, the Fifth Circuit has held that a "district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under § 2255." United States v.

Seigler, 37 F.3d 1131, 1135 (5th Cir. 1994); see also United
States v. Faubion, 19 F.3d 226, 232 (5th Cir. 1994) (holding an
attack on a district court's departure upward under the
guidelines is not cognizable on collateral review).  Thus,
Wyrick's complaints are not cognizable on collateral review.

Wyrick also alleges his counsel failed to argue against the
two-level increase in the sophisticated means test under USSG
§ 2B1.1(B)(10)(C).[4]  The court declines to find counsel's
performance deficient for failing to raise what would have been a
frivolous objection.  Green v. Johnson, 160 F.3d 1029, 1037 (5th
Cir. 1998).

B.   Alleged Involuntary Plea of Guilty

Wyrick alleges that his guilty plea was unknowing and
involuntary, because he misunderstood the elements of conspiracy,
and that he would not have pleaded guilty had he been aware of
those elements.  Supplemental Br. at 26-28.  When a prisoner has
pleaded guilty, he will only successfully obtain relief under §
2255 "if: (1) the plea was not entered voluntarily or
intelligently, . . . or (2) the [prisoner] establishes that he is

---

[4]The sentencing guidelines provide for a two-level increase if the fraudulent scheme
"otherwise involved sophisticated means." USSG § 2B1.1(b)(10)(C).  Viewed in its entirety,
Wyrick's conspiracy, spanning a five-year scheme to defraud his employer of over $1.2 million,
"involved sophisticated means even if some aspects of [his] offense were not sophisticated." See
United States v. Rubio, 225 Fed. App'x 290, 291 (5th Cir. 2007).

actually innocent of the underlying crime." <u>United States v.</u>
<u>Sanders</u>, 157 F.3d 302, 305 (5th Cir. 1998).  The prisoner bears a
heavy burden to persuade the habeas court that his guilty plea
was involuntary after testifying to its voluntariness in court.
<u>Deville v. Whitley</u>, 21 F.3d 654, 659 (5th Cir. 1994).  The
defendant's statements at the plea colloquy and a signed,
unambiguous plea agreement are "accorded great evidentiary
weight" in determining the voluntariness of a guilty plea.
<u>United States v. Cothran</u>, 302 F.3d 279, 283-84 (5th Cir. 2002).

A guilty plea is valid only if entered voluntarily,
knowingly, and intelligently, "with sufficient awareness of the
relevant circumstances and likely consequences." <u>Bradshaw v.</u>
<u>Stumpf</u>, 545 U.S. 175, 183 (2005).  Here, the record reveals that
Wyrick entered a knowing and voluntary plea with full knowledge
and awareness of the elements of the offense and the consequences
of doing so.  He was correctly admonished as to (1) his
constitutional rights; (2) his potential sentence; (3) the role
of the sentencing guidelines and the judge in determining a
sentence; (4) the consequences of waiving his rights and pleading
guilty; (5) the terms of his plea agreement; and (6) the nature
of the charge he intended to plead guilty to and the elements to
that charge.  <u>See</u> Plea Agreement; Factual Resume; Rearraignment

Tr. at 3-34.  Wyrick told the court under oath that he understood all of the court's admonishments, that his decision was freely and voluntarily made, that the facts in the factual resume were true and correct, and that he did conspire with Steele to defraud BNSF.  Id.

For much of the same reasons, Wyrick's other allegations--that he was misinformed by counsel that he "would get a mere slap on the wrist if he [pled] guilty," Supplemental Br. at 31, or "worst case scenario" get a "sentence of no more than 6 months," Supplemental Br. at 6--are also contradicted by the record.  In his rearraignment, Wyrick told the court under oath that no one made any promises or assurances as to what his sentence would be, and he understood that he could receive a 20-year sentence. Rearraignment Tr. at 8-11, 19-20, 26-27.  His plea agreement clearly acknowledged the same.  Plea Agreement at ¶ 9.  When viewed in light of the record, Wyrick's allegations fail to show that his plea was either involuntary or unknowing.

C.   Ineffective Assistance of Counsel Claim

Wyrick's ineffective assistance of counsel claim asserts a laundry list of complaints, totaling fourteen alleged failings by his counsel.  To prevail on a claim of ineffective assistance of counsel, Wyrick must show that (1) counsel's performance fell

11

below an objective standard of reasonableness and (2) there is a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceedings would have been different.
Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Both
prongs of the Strickland test must be met to demonstrate
ineffective assistance; however, both prongs need not be
considered if movant makes an insufficient showing as to one.
Id. at 687, 697. Judicial scrutiny of this type of claim must be
highly deferential, and the movant must overcome a strong
presumption that his counsel's conduct falls within the wide
range of reasonable professional assistance. Id. at 689.

In considering Wyrick's allegations, the court turns first
to the "six general duties that a professional and competent
defense attorney owes to his [] client," concerning: counsel's
failure in his duties (1) of loyalty; (2) to avoid conflicts of
interest; (3) to investigate Wyrick's case; (4) to consult with
Wyrick; (5) to keep Wyrick informed; and (6) to "bring such skill
and knowledge as will [r]ender the [p]roceeding" reliable.
Supplemental Br. at 9-10. The court then evaluates the "list of
[eight] . . . errors or omissions," id. at 10, that allegedly
show Wyrick's counsel was deficient, concerning: counsel's (1)
faulty presumption of Wyrick's guilt; (2) deficient advice on
elements of conspiracy; (3) failure to pursue defenses; (4)

12

improper pressure on Wyrick to plead guilty; (5) failure to

inform Wyrick of the consequences of pleading guilty; (6) failure

to correct misstatements in the PSR; (7) failure to advocate

mitigation; and (8) failure to advocate for the truth.  Id. at

12-25.

Here, Wyrick is entitled to no relief because he has failed

to meet the standard set forth by Strickland.  Wyrick's

allegations concerning counsel's duty of loyalty are merely

conclusory allegations devoid of factual support.  See Miller v.

Johnson, 200 F.3d 274, 282 (5th Cir. 2000).  The same is true of

his allegations concerning counsel's duty to avoid a conflict of

interest.  Supplemental Br. at 11.  These allegations simply fail

to show that counsel had divided loyalties that adversely

affected his ability to represent Wyrick.  See United States v.

Martinez, 151 F.3d 384, 393 (5th Cir. 1998).

As for counsel's duty to investigate his case, Wyrick

contends counsel "failed to argue statute of limitations issues

or explain relevant conduct."  Supplemental Br. at 11.  However,

Wyrick's conspiracy continued until 2007 and he was indicted in

February 2010--well-within the five-year statute of limitations.

See 18 U.S.C. § 3282; United States v. Lokey, 945 F.2d 825, 832

(5th Cir. 1991).  Wyrick also does not identify what "relevant

conduct" counsel failed to explain to him or how that alleged

failure affected the outcome.   Thus, even if these allegations were true, Wyrick cannot show prejudice to his case.

As for counsel's duty to consult with his client, Wyrick alleges that counsel failed to consult with him on various issues, such as the advantages and consequences of the plea agreement.   Supplemental Br. at 11.   The record, which includes statements made before the court and the plea agreement Wyrick signed, clearly demonstrates otherwise.[5]   Rearraignment Tr. at 14-26; Plea Agreement at ¶ 10.

As for counsel's duty to keep Wyrick informed, Supplemental Br. at 11, Wyrick does not explain how counsel's alleged failure to update him on the ongoing prosecution of his case affected the outcome of his case.   Nor does he identify what alleged misstatements of the law his counsel made to him or show how any alleged misrepresentation about the status of his co-defendant Steele's case affected his case.

Finally, the court turns to counsel's duty to "bring such skill and knowledge as will [r]ender the [p]roceeding" reliable.

_____

[5] Under oath, Wyrick told this court he reviewed the plea agreement, and he understood its terms and the ramifications of entering into it and pleading guilty. Rearraignment Tr. at 14-26. In his plea agreement, Wyrick further stated that counsel gave him satisfactory explanations as to its terms, his affected rights, and the alternatives. Plea Agreement at ¶ 10. He also stated that after conferring with counsel, he concluded it was in his best interest to enter into the plea agreement and plead guilty. Id.

14

Id. at 9.  Although Wyrick complains counsel "took the approach

of soft negotiations" and "gave away . . . his liberty without

any real testing of the facts," id. at 12, the record plainly

shows that counsel negotiated a plea agreement that significantly

reduced his exposure to punishment and successfully advocated for

a reduced sentence.  See, e.g., Sent'g. Tr. at 13-16.

The court now considers the eight alleged errors and

omissions Wyrick claims.  The court concludes that here, as well,

Wyrick alleges nothing that meets the Strickland standard for

deficient performance.  Although Wyrick alleges counsel

improperly "presumed" he was guilty, Supplemental Br. at 12,

Wyrick made statements to the court fully acknowledging "the

crime that [he] did commit."[6]  Sent'g. Tr. at 17.  Moreover,

Wyrick does not explain with specificity what he meant when he

stated that counsel failed "to do the necessary thorough

investigation of the facts or diligent research of the law."

Supplemental Br. at 13.  "A defendant who alleges a failure to

---

[6]In his statement to the court, Wyrick admitted he took responsibility for his crime:

DEFENDANT WYRICK:   I want to start off by apologizing to this court for the
crime that I did commit, and I apologize to BNSF Railroad, my former employer,
and I want to let you know I am taking full responsibility [for] my actions . . . . I
apologize for the actions that I have done . . . . I know the crime that I committed
will have some incarceration involved in it, and I just--I really apologize for the
things I've done.

Sent'g. Tr. at 17.

investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." <u>United States v. Green</u>, 882 F.2d 999, 1003 (5th Cir. 1989). Wyrick's allegations fail to meet this standard, and moreover, his "unsupported, after-the-fact, self-serving revisions" claims do not rebut his earlier statements during the colloquy. Sent'g. Tr. at 5-12, 17; <u>Cothran</u>, 302 F.3d at 284.

In complaining of the deficiencies in counsel's advice, Wyrick alleges that counsel failed to fully explain the essential elements of the conspiracy charge. Supplemental Br. at 15. It seems to the court that Wyrick is arguing that counsel was deficient because of Wyrick's mistaken understanding of the case law. <u>Id.</u> at 15-16. However, this claim, too, is belied by Wyrick's statements in the record. Rearraignment Tr. at 13-18. The factual resume clearly states the requisite elements and facts proving that Wyrick engaged in a conspiracy, all of which Wyrick told this court were true. Factual Resume at 1-3.

Similarly, Wyrick's complaint, that counsel "neither offered nor advocated any defense alternatives," Supplemental Br. at 17, is contradicted by the terms reflected in his plea agreement. Plea Agreement at ¶ 10. Wyrick never identifies these "defense

16

alternatives" nor does he explain how pursuing them would have altered the outcome of his case.  The remaining allegations that Wyrick makes about counsel's advice on the plea agreement are likewise contradicted by the record.[7]  See Rearraignment Tr. at 13-34.  In short, Wyrick has not succeeded in showing that counsel failed in his duty to advise Wyrick on the terms of the guilty plea.

Wyrick then faults counsel for allegedly failing "to advocate for any sentencing mitigating factors," Supplemental Br. at 22; and for failing to emphasize his "broken family" background and his lack of a criminal history.  Supplemental Br. at 22.  Like his other allegations, these too are belied by the record.  All of this information was contained in the PSR, PSR at ¶¶ 62-68, 72-73, and counsel had submitted numerous character reference letters to the court, Sent'g. Tr. at 13-16.

Wyrick also argues that counsel failed to object to and correct allegedly erroneous statements in the PSR.  Supplemental Br. at 20.  His complaint, however, that the restitution amount

---

[7]Wyrick's remaining contentions allege counsel "pressured" him to make "an uninformed and unintelligent" guilty plea because he did not receive "a full explanation of the essential elements" of his offense, Supplemental Br. at 18, counsel "[f]ailed to [f]ully [d]isclose the [c]onsequences" of pleading guilty, id. at 19, and counsel "failed to advocate for the truth" because "he was not involved in any 'conspiracy'," and because the total loss amount "is so far fetched" and "without substance." Id. at 23-24.

is "so inaccurate" as to be "absurd," is simply a conclusory, factually unsupported allegation. <u>Id.</u> at 21.

His other complaint is that counsel "should have objected" to the supervised release term of five years contained in the PSR. <u>Id.</u> at 33. The court will assume that this is a valid complaint. As previously noted, the court is correcting the judgment of sentence to show that the proper term of supervised release is three years.

D.   <u>Alleged Improper Jurisdiction/Venue</u>

Wyrick's jurisdiction-challenging argument, boiled down, is that the court lacked jurisdiction because the "act of the crime took place in Kansas City." Supplemental Br. at 31-32. Under 18 U.S.C. § 3231, United States district courts have jurisdiction over "all offenses against the laws of the United States." Wyrick has pleaded guilty to violating 18 U.S.C. § 1349, an offense against the laws of the United States. Section 3237 provides that "any offense . . . begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C 3237. The record shows that Wyrick's criminal conduct spanned both Kansas and Texas. His defrauding of BNSF flowed from electronic transfers

18

of information between Kansas and Texas company servers that
approved his requests for fraudulent invoices.   Factual Resume at
3-4.   Thus, there was no defect in the court's exercise of
jurisdiction over Wyrick's case.

Wyrick's venue-related complaint, that counsel failed to
argue for a change of a venue, is also conclusory and meritless.
Supplemental Br. at 31; see Smith v. Puckett, 907 F.2d 581 (5th
Cir. 1990).   Since Wyrick decided to plead guilty, counsel had no
reason to file a motion for change of venue.   Moreover, Wyrick
does not explain how the failure to request a change of venue
prejudiced him.

V.

CONCLUSION
and
ORDER

In sum, Wyrick's motion has raised nothing but self-serving,
after-the fact speculation that his constitutional rights were
violated.   The one exception to his allegations is the error in
the term of supervised release, which the court is correcting.

Therefore,

The court ORDERS that the motion of Wyrick to vacate, set
aside, or correct sentence pursuant to 28 U.S.C. § 2255 be, and
is hereby, granted in part, and denied in part.

19

The court further ORDERS that the term of supervised release
of five years that was a part of Wyrick's sentence, as imposed on
July 23, 2010, and formalized by written Judgment in a Criminal
Case signed and entered July 28, 2010, be, and is hereby,
corrected so that the term of the supervised release that is to
be served by Wyrick be, and is hereby, reduced from five years to
three years, and that, in all other respects, the relief sought
by Wyrick's motion to vacate, set aside, or correct sentence be,
and is hereby, denied.

SIGNED December 14 2011.

JOHN McBRYDE
United States District Judge